ALBANY,
February, 1803.

Le Roy
v.
Servis.

Judgment of affirmance.

Le Roy and others, *Appellants,*
*against*
Servis and others, *Respondents.*

THE facts of this case are stated in vol. 1. p. 1, of the introductory cases, but as the opinion there is that of Mr. *Gold* only, the decision of the court is now given.

BENSON, J. I premise, that in a case otherwise properly cognisable in a court of law, if the plaintiff, for want of a *writing*, the evidence of his right, is obliged to sue in *equity*, it is a rule there, that he must verify on *oath*, the allegation that the writing is lost, or in the possession of the defendant; that this rule is in the same reason with the rule in the courts of *law*, in cases of pleas to the jurisdiction, foreign pleas, and claims of cognisance, and is intended only to prevent a change or transfer of jurisdiction, without any cause shown as arising from facts proved on *oath*, and doth not diminish or deprive the defendant of any *real* advantage of defence; so, that the proof, although not absolutely

positive and conclusive, but less precise and full, will suffice. That in order to confine the rule to its *mere* object, if the bill is for *discovery* only, or if it is for a *general* discovery of *all* writings in the possession of the defendant, whatsoever they may be, and where it is to be supposed the plaintiff hath no *particular* knowledge of them, but yet that some writings of some kind, in which he is interested, and relative to the property he seeks to recover, do exist and are in the possession of the defendant, that in these cases, the allegation of the loss of the papers, or that they are in the possession of the defendant, need *not* be on oath. That until some decisions in *England*, within ten years past, it hath always been held, as it is expressed in the books, that " a *demurrer* being bad in *part*, must be overruled," for it is not like a plea " which may be allowed in *part;* but a demurrer void in *part* is void in *toto*, and cannot be separated," " that a general demurrer to the *whole* bill, if there is any *part* of the bill to which the defendant ought to put in an answer, the demurrer being *entire*, must be overruled," " that a demurrer if defective in *part*, is bad for the *whole*, for it cannot be *split*." That although the decisions of the English courts are deservedly of great authority, yet the reasons in these alluded to, " the supposed hardship on a defendant, if he cannot avoid the expense of taking a copy of a *long* bill, if there chances to be a right to a discovery," and thereby making " the only question to be, whether the plaintiff should be put to the expense of a bill, or the defendant of a new demurrrer," are not convincing; for if the defendant, instead of a *general* demurrer to

the whole bill will demur particularly to each sepa-
rate or distinct part or matter, to which he may sup-
pose " he ought not to put in an answer," the demur-
rer may be overruled as to some parts or matters, and
allowed as to others ; and the defendant, among
other costs, may be decreed the expense of so much
of the copy of the bill, to which the demurrer was al-
lowed ; so, that there will not, in that respect, be
any hardship left on him.    It may be also stated, that
there are other means, and within the powers of the
court, to correct the mischief, if it prevails, of filing
bills of an undue length, containing matters to
which the defendant ought not to answer, preferably
to merely *turning the plaintiff round*, and subjecting
him to the delay and expense of a new bill.    The
conclusion, therefore, is, that there hath not appear-
ed to us sufficient reason to change an established and
approved practice ; and, consequently, if there are
any matters in the bill, to which the defendants ought
to have put in an answer, the demurrer being *general*,
and to the whole bill, must be overruled in the *whole*.
This leads to an examination of the several causes of
demurrer.

First cause of demurrer.—The defendants object
to the proof as arising from the affidavit of the
complainant, *Boon ;* 1st. That there is only the oath
of *one*, whereas there ought to be an oath from *every*
of the complainants ; 2dly. That the oath ought not
only to state the destruction of the supposed writings,
but also that the deponents have them not in their
own possession ; and 3dly. That the deponent doth
not swear from his *own* knowledge, but from the in-
formation of *others.*    Here I state that the proof of

Z

the allegation of the loss of the writing is restricted to the oath of the party, in exclusion of the oath of a stranger; and, therefore, if the circumstances of the case are such, as that it is to be presumed the party cannot know the facts from his own knowledge, he must then, from necessity, be admitted to testify from the *credible* information, or in other words, from the hearsay of *others* ; that, whenever the law admits hearsay testimony, the fact is then as competently thereby proved and established, as if the person giving testimony, was to testify from his own knowledge ; that, whenever a person swears from the credible information of others, it not only implies that he hath inquired to an extent, and in a manner, to produce a rational belief, that the fact is as he testifies it to be, but it also excludes the supposition that he hath any reason even to *suspect* it to be otherwise; that, a distinction is to be taken between the cases, where the writing is so lost, only, as that it cannot for the present be found, yet is supposed still to exist, and the cases where the writing is wholly destroyed, and, therefore, supposed *not* to exist ; and that, although in some of the former cases, it may be proper, in order to guard against evasion, to require the party to swear also, that he hath not himself the writing in his possession, yet, that in the latter cases, it would be altogether a useless accumulation of proof; it would be to require proof of another proposition of fact, which follows as a necessary logical consequence from one already proved. Assuming it, therefore, and which, I think, cannot be questioned, that the present is one of the cases in which proof from the information, or hearsay of others, is to be received, then the fact, of the de-

struction of the supposed conveyances, from the ori-
ginal patentees to Sir *William Johnson*, is duly and
competently proved; and, consequently, the affi-
davit of the complainant, *Boon*, alone is sufficient, so
that the first cause of demurrer fails.

Second cause of demurrer.——It must be admitted,
that there cannot be a more sound or salutary princi-
ple than the one on which this cause of demurrer
proceeds; that a court of equity should always with-
hold its aid and countenance from a suitor, whose
conduct appears in any part, such as a conscience
rightly informed, cannot approve : but the principle
is not applicable to the present case.　The supposed
illegality of the agreement between the original pa-
tentees and Sir *William Johnson*, consists in its be-
ing in contravention of the instruction from the king
to the governor, restraining the patents for lands, to
quantities not exceeding 1,000 acres to each patentee.
The futility of this regulation was soon discerned,
and the instruction was, for not much less, if any,
than half a century before the patent mentioned in
the bill issued, considered altogether as a dead letter,
and the compliance with it a mere matter of form.——
But, even conceding that the legality of an agree-
ment, similar to the one supposed to have taken
place between the patentees and Sir *William Johnson*,
might be made a question, yet that could only be
the case where the agreement was *before* the Indian
purchase ; because, immediately on the purchase,
the king, in whose name these purchases were always
made, became trustee for the persons to whose use
they were made, and the trust, possibly on *artificial-
ly legal* principles, might have been limited to a

quantity not exceeding the rate of 1,000 acres to each person. The several *cestui que trusts*, however, had an equitable interest in their respective shares, which they could legally assign, and agree to vest the title at law in the assignees, on the issuing of the patent; and, as it doth not appear when the agreement in the present instance was made, in respect to whether *before* or *after* the Indian purchase, the illegality of it cannot come under consideration on the defendants' demurrer. It was a matter of which they could avail themselves by plea only, with the requisite averments supplying the uncertainty of the bill, as to the *time* when the agreement was made.

Third cause of demurrer.—The answer which has been given to this cause of demurrer is, that it was not requisite for the defendants, in answering the bill, to declare, either that there was an adverse possession, or if there was, then that the defendants *knew* it; but, that it would have been sufficient, if they had simply admitted, that their vendors were not, at the time of purchase by them, the defendants, in possession; because, whether the possession was vacant, or whether it was adversely held by others, and if the latter, whether the defendants knew it, which ever might have been the fact, was wholly immaterial. This answer, it must be owned, is far from being unsatisfactory; at the same time, the principle, *that a man is not held to accuse himself*, is so estimable, that we cannot be too cautious in admitting distinctions or qualifications of it. Therefore, and especially as the discovery sought for in this instance, is of a fact altogether useless in the complainants'

case, I should have supposed it more safe, if a particular demurrer had been put in to that part of the bill, to have allowed it, and ordered the allegation and interrogatory which the demurrer supposes to be exceptionable, to be struck out of the bill.

Three last causes of demurrer.—I shall consider these causes together, for I am not persuaded they might not all have been shown under the last, the general cause of demurrer, they being essentially the same, amounting to a denial that the court ought to grant a relief, supposing all the allegations in the bill to be confessed, which is only saying in other words, *there is a want of equity.* I here remark, that it is ordinarily premature, wholly to dismiss a bill on a demurrer for this general cause, and so, as it were, at the threshold, unless the complainant's case is, from his own showing, radically such, that no discovery or proof can possibly make it a proper subject of equitable jurisdiction. Such was the late case of *Munro* and others, appellants, v. *Allaire*, respondent, decided in this court, where the complainant came to have a purchase of lands perfected and confirmed to him, the supposed sale being made by trustees under a will, and he being one, and not alleging himself also a *cestui que trust*, one of the legatees to whom the money arising from the sale was to be paid, and that he, although a trustee, was obliged to purchase, in order to avoid the loss to himself as a *cestui que trust*, by a sale at a less price : for it is to be remarked, that a defendant doth not forego or waive a single advantage as to the merits, or the point, whether the complainant hath equity, by not demurring. He may equally insist on the same

ALBANY.

Le Roy
v.
Servis.

matters, by way of answer, which he might have done by demurrer, and if he should even omit them in the answer, he may still avail himself of them in argument on the final hearing of the cause ; my opinion, therefore, is, that the bill ought to have been retained, and that the court of chancery should have reserved itself on the question—whether the complainants were entitled to any, or what relief,—until all the proofs, either as arising from the answers of the defendants or otherwise had come in; and, consequently, that the several decrees allowing the respective demurrers of the respondents, and dismissing the appellants' bill, be reversed. The respondents have not only put in separate demurrers, but they have also proceeded separately to decrees. How far, or by what means, a court of chancery ought to restrain and regulate the right of defendants to *sever* in their defence, so as to prevent them from availing themselves of it solely to vex the complainants, are matters in which I forbear from an opinion in my place in this court, because it is unnecessary : We can only declare and establish what shall be the consequences of an unnecessary severance, if there should afterwards be an appeal and a judgment of reversal for the complainants. This may, in some measure, prevent the abuse alluded to. My opinion, therefore, further is, that *each respective* respondent in the present appeal, be decreed to pay the appellants for their costs on the appeal, a sum to the same amount, which would have been decreed to be paid by them *all jointly*, if they had joined in demurrer in the court below.

DECREED.*

ALBANY.

* 14th *March,*
1798.

ON hearing counsel on this appeal, it is adjudged, ordered and decreed by this court, that the several decrees of the court of chancery therein complained of, allowing the separate demurrers of the respondents respectively, to the bill of complaint of the appellants, against the respondents, and the other defendants in the bill named, and that the said bill, as it respected each of the respondents, should be dismissed, be reversed ; and further, that the respondents severally pay to the appellants, the sum of 30 dollars for their costs on this appeal, in respect to each respective decree so reversed, and that the cause be remitted back to the said court of chancery, and that there, such further proceedings shall be thereupon had, as well for execution of this judgment, order, and decree, as otherwise, as shall be agreeable to equity and justice.